RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 25-1054

HUGO OZIEL BENAVIDES.

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cr-00162—Hala Y. Jarbou, District Judge.

Argued: June 4, 2026

Decided and Filed: August 4, 2026

Before: GRIFFIN, LARSEN, and READLER, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:** Nicholas V. Dondzila, DONDZILA LAW, PLLC, Ada, Michigan, for Appellant. Austin J. Hakes, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge. Hugo Benavides pleaded guilty to one drug conspiracy count, and the district court sentenced him to a within-Guidelines sentence of 96 months in prison. Benavides appeals his sentence. We AFFIRM.

I.

Hugo Benavides, Srecko Walker, and Steven Rasic were involved in a cocaine conspiracy. Walker ordered cocaine from a supplier near the United States-Mexico border. Benavides, acting on the supplier's behalf, mailed the cocaine to Walker. Walker paid Rasic, a postal worker, to deliver the packages to stops along Rasic's mail routes. Investigators intercepted two of the packages and found kilograms of cocaine inside.

Investigators believed Benavides was using his mother's home as a drug stash house. When they confronted Benavides at the residence on June 6, 2022, he admitted to having cocaine in the home and allowed the investigators to go inside and seize the cocaine (2.7 grams). A search of the home authorized by Benavides's mother uncovered three firearms. Benavides took responsibility for the cocaine and firearms.

A grand jury indicted Benavides, Walker, and Rasic for their roles in the conspiracy. Benavides later pleaded guilty to conspiring to distribute and to possess with intent to distribute cocaine. At sentencing, the district court applied the firearms enhancement under U.S.S.G. § 2D1.1(b)(1) and denied Benavides's request to apply the zero-point offender reduction under U.S.S.G. § 4C1.1(a). The court sentenced him to 96 months in prison, within the Guidelines range of 87 to 108 months. Benavides appeals, challenging only his sentence.

II.

*Firearms Enhancement.* Benavides first challenges the district court's application of the two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1). The enhancement has two elements. "The government must show, by a preponderance of the evidence, that (1) the defendant actually or constructively possessed the weapon, and (2) the weapon was possessed during 'relevant conduct' to the offense." *United States v. Brown*, 131 F.4th 337, 343–44 (6th Cir. 2025) (citation omitted). "The standard of review differs for these respective elements." *Id.* at 344. "Element one—actual or constructive possession—is reviewed for clear error." *Id.* "Element two—whether the dangerous weapon was possessed during 'relevant conduct' to the offense—is reviewed de novo." *Id.* If the government meets its burden, "the enhancement

applies unless the defendant establishes a clear improbability that the weapon was connected to the offense." *United States v. Minter*, 80 F.4th 753, 760 (6th Cir. 2023) (citation omitted).

Benavides doesn't dispute that he possessed the firearms found in his mother's home on June 6, 2022. Instead, he argues that the government didn't prove that the possession occurred during relevant conduct. We disagree.

Benavides briefly contends that "the government failed to present any evidence that the conspiracy extended beyond" late March or early April 2022, when the last package was delivered via mail. Appellant Br. at 13. But he does little to develop the argument. Indeed, he concedes that "related proofs may have been admitted during Walker's trial" showing that Walker "traveled to southern Texas in June 2022," (after the June 6 search) in furtherance of the conspiracy. *Id.* In light of this evidence, we see no clear error in the district court's determination that the conspiracy continued past the date that law enforcement searched the home of Benavides's mother.

Benavides's more-sustained argument is that he was not personally involved with the conspiracy after late March or early April of 2022. Benavides bears the burden of proving his withdrawal from the conspiracy. *See United States v. Cox*, 565 F.3d 1013, 1016 (6th Cir. 2009). The only evidence he offers is that the last drug shipment occurred in late March or early April 2022. But "mere cessation of . . . activity" does not establish withdrawal from the conspiracy. *Id.* (citation omitted). Instead, a defendant must show that he undertook an "affirmative action to defeat or disavow the purpose of the conspiracy." *Id.* (citation omitted). Benavides has no such evidence. So the district court didn't err by concluding that Benavides possessed firearms during the conspiracy.

Benavides also hasn't shown that it was clearly improbable that the firearms were connected to the offense. *Minter*, 80 F.4th at 760. The government presented several photos found on Benavides's phone, including one photo of a firearm, along with other photos of drugs and "receipts for tracked packages." R. 234, Sentencing Hr'g, PageID 913. The government also found cocaine in the same home as the firearms, and Benavides admitted possession of both; cocaine, moreover, was the foundation of the conspiracy. Based on this evidence, it wasn't

clearly improbable that the firearms were connected to the conspiracy. The district court didn't err by applying the § 2D1.1(b)(1) enhancement.

*Zero-Point Offender Reduction.* Benavides next argues that the district court erred by not applying the "zero-point" reduction under U.S.S.G. § 4C1.1. "[W]e review the district court's legal determinations de novo and its factual findings for clear error." *United States v. Tajwar*, 167 F.4th 867, 870 (6th Cir. 2026). Pursuant to § 4C1.1(a), the district court should decrease a defendant's offense level by two levels if the defendant meets each of eleven requirements. One of those requirements is that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(7).

When the parties filed their briefs, there was little guidance on § 4C1.1(a)(7). But we have since determined that the phrase "'in connection with' demands a minimal . . . degree of connection to the crime at issue." *Tajwar*, 167 F.4th at 871 (citation omitted). The burden of showing "a nexus between the firearm and the . . . felony is not onerous." *Id.* (citation omitted). "It is enough that the firearm facilitated or had the potential of facilitating [an]other offense." *Id.* (citation modified).

One remaining question for § 4C1.1(a), however, is who bears the burden. We conclude that it is the defendant's burden to show entitlement to the reduction. First, the language of § 4C1.1(a) supports this conclusion. After all, it offers *the defendant* a two-level decrease and is available if "the defendant meets all of the . . . criteria." U.S.S.G. § 4C1.1(a). It follows that the defendant would bear the burden of establishing entitlement to the benefit. Second, "[t]he § 4C1.1(a)(7) firearm-possession disqualification is based on the safety-valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2." *United States v. Cooper*, 2024 WL 3093575, at *3 (E.D. Tenn. June 20, 2024); *see* U.S.S.G. App. C, amend. 821 (Nov. 1, 2023). For the safety-valve provisions, "[t]he defendant bears the burden of proving by a preponderance of the evidence that she 'meets each and every criterion.'" *United States v. Reinberg*, 62 F.4th 266, 268 (6th Cir. 2023) (quoting *United States v. Barron*, 940 F.3d 903, 914 (6th Cir. 2019)). We see no reason to conclude differently here. Because the defendant bears the burden of establishing entitlement to the § 4C1.1(a) reduction, he must show that he "did not possess,

receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" under § 4C1.1(a)(7). *See United States v. Salazar*, 2024 WL 4603965, at *2 (10th Cir. Oct. 29, 2024).

Benavides hasn't met his burden. The same evidence that supported the § 2D1.1(b)(1) enhancement indicates at least a minimal connection between Benavides's possession of the firearms and the offense: the conspiracy was ongoing; photos on Benavides's phone depicted a firearm along with photos of drugs and tracked packages receipts; and police recovered firearms and cocaine in the home. What's more, "[f]or drug-related offenses, we often infer that a defendant's firearm could or would be used to protect drugs or otherwise facilitate a drug transaction when the defendant keeps the weapon close to his drugs or drug paraphernalia." *Tajwar*, 167 F.4th at 871 (citation modified). This is true even when a defendant, such as Benavides, "did not personally deal drugs" but was involved in other portions of the drug transaction. *Id.* Here, there is no evidence in the record to preclude the inference that the firearms were tied to the drug conspiracy, such as the firearms not being not kept close to or in the same room as the drugs. Benavides hasn't shown that his possession of the firearms was not connected to the cocaine conspiracy, and the district court didn't err by declining to apply the § 4C1.1(a)(7) reduction.

*Substantive Reasonableness.* Benavides finally argues that his within-Guidelines sentence was substantively unreasonable. A substantive reasonableness claim "is a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.* We review for an abuse of discretion, *id.*, and we presume that a sentence within the Guidelines range, like Benavides's, is reasonable, *United States v. Owen*, 940 F.3d 308, 317 (6th Cir. 2019).

Here, the district court's sentence was substantively reasonable. The court walked through the 18 U.S.C. § 3553(a) factors. The court found that Benavides played a significant role in the conspiracy, which trafficked a large quantity of cocaine; the court determined that the crime was serious and had a significant effect on the community. Given "[t]he amount of drugs that were being shipped into this community" and the "very serious . . . consequences" stemming

from the consumption of those drugs, the court determined that protecting the public from future misconduct was important. R. 234, Sentencing Hr'g, PageID 936. The court also considered Benavides's prior offense conduct and personal characteristics. The court noted that, although Benavides had some prior arrests, he had no prior convictions. The court also noted Benavides's "mostly stable upbringing," and commended him for having a high school education. *Id.* at 937. The court weighed the good and the bad and sentenced Benavides to a sentence in the middle of the Guidelines range. Thus, "[t]he district court properly considered all of the factors, balanced them, and imposed a reasonable sentence." *Rayyan*, 885 F.3d at 443. Benavides's sentence was substantively reasonable.

Benavides emphasizes his positives (education, family history, employment) and the PSR's recommendation of a below-Guidelines sentence as proof that his sentence was substantively unreasonable. But the court considered and weighed those factors and found that a middle-of-the-road sentence was appropriate. It is not this court's "job on appeal . . . to reweigh [the] factors." *United States v. Williams*, 169 F.4th 727, 732 (6th Cir. 2026). Benavides's argument that the court should have balanced the factors differently "is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable." *United States v. Roper*, 161 F.4th 430, 438 (6th Cir. 2025) (citation modified).

Benavides also decries the disparity between his 96-month sentence and that of his co-defendant, Rasic, who had a similar role in the conspiracy, but received a 1-day sentence. But the Guidelines' concern is with "national disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Bass*, 17 F.4th 629, 636 (6th Cir. 2021) (citation modified). To the extent Rasic's sentence is relevant, the government explained the important differences between the sentences. Rasic was eligible for two sentencing reductions, while Benavides wasn't. Plus the court varied downward for Rasic so he could assist with his wife's medical care. Benavides has no rebuttal. These differences led to different sentences and didn't render Benavides's sentence substantively unreasonable. *See id.*

* * *

We AFFIRM.